**UNITED STATES of America, Plaintiff,**

v.

**Eric F. WEISS, Defendant.**

**No. 83–274–AAH.**

United States District Court,
C.D. California.

July 12, 1983.

Stephen S. Trott, U.S. Atty., Robert L. Brosio, Fred D. Brosio, Jr., Asst. U.S. Attys., Los Angeles, Cal., for plaintiff.

Walter Tribbey, Schessler & Tribbey, Ontario, Cal., for defendant.

## MINUTE ORDER

(Findings of Fact, Conclusions of Law and Judgment Dismissing Case Against Plaintiff, U.S.A. and Granting Acquittal to Defendant)

HAUK, District Judge.

This matter came on for Jury Trial on Wednesday, June 29, 1983, before the undersigned Judge A. Andrew Hauk upon transfer under Central District of California Local Rules, Rule 2, from the Honorable A. Wallace Tashima of this above-entitled Court due to his crowded Court calendar, and continued at jury trial before the undersigned Judge thereafter from day to day, June 29, June 30, July 1, July 5, and July 6, 1983. In the course of the trial, evidence was introduced and analyzed by the Court which strongly indicated and suggested to the Court that Plaintiff U.S.A., by and through its Internal Revenue Service (IRS) of the Department Of The Treasury by reason of possible acts of misconduct by the IRS agents and employees, had engaged in what the Court considered might well constitute "governmental misconduct" and "institutional bad faith", in the improper and intermingled initiation and execution of civil and criminal investigations in this case.

For which reasons, the Court entertained a motion by Defendant for Dismissal of the Indictment and Judgment of Acquittal, against Plaintiff U.S.A. and in favor of Defendant, and set a deadline date of noon, July 6, 1983, for the Government to produce documents and other evidence showing or tending to show that there was no governmental misconduct or institutional bad faith in the course of the investigations and prosecution of this case and ordered briefings on law and fact by both sides of this issue.

When the Government was unable and failed to produce such documents and evidence, the Court initiated the hearing on July 6, 1983, which it had previously indicated it would, immediately after the deadline of noon.

After full hearing of the arguments, and consideration of the briefings on facts and law, the Court now finds and concludes as follows:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ 1. The Government and the Internal Revenue Service (IRS) of the Treasury Department in this case are guilty of governmental misconduct and institutional bad faith in failing to follow the strictures and regulations of the Internal Revenue Manual (IRM).[1]

2. They did not follow the Manual and its Regulations in conducting the civil investigation and the criminal investigation in this case.

3. While the Civil Audit Division referred the investigation to the Criminal Intelligence Division (CID) for criminal investigation on May 15, 1979, utilizing Form 2797 as required by Section 4565.22(1) of the IRM, the CID did not return the referral report within the fifteen (15) work-day limitation contained in Section 4565.22(2) of the IRM, failing to notify the Audit Division of the acceptance of the referral for criminal investigation until June 21, 1979,

---

1. The Internal Revenue Manual in effect during the relevant period of 1979 is found and cited in "Internal Revenue Manual" (C.C.H.1979).

after the passing of twenty-six (26) work days.

4. Although the Internal Revenue Manual requires that such notification of acceptance of the investigation by CID must be made on either Form 2797 or Form 3212 (IRM, Section 9322.2(1)), upon which the CID must also note whether a cooperating civil officer should be assigned, and although the CID utilized Form 2797 in accepting the referral, it did not fill in the box on this form to request the assistance of a cooperating Civil Revenue Agent, all in violation of IRM, Section 9322.2(1); nor was any extension of time requested as permitted in Section 9322.2(2) of said IRM.[2]

5. The request for assignment of a Co-operating Civil Officer was made by the CID on Form 1937 and Form 1937–A (carbon copy), which is not permitted by the IRM.[3]

6. In any event the request was not made until October 9, 1979 by the Criminal Intelligence Division and was not acted upon by the Civil (Audit) Division until October 10, 1979 when Civil Revenue Agent Krietz was finally designated to be assigned to the CID as a Cooperating Officer.[4]

7. In the meantime, however, the CID initiated its criminal investigation and utilized as early as October 1, 1979, Revenue Agent Floyd Krietz to assist as a Cooperating Officer although at that time he had not yet been so assigned or designated. The CID Special Agent Thompson and the Civil Revenue Agent Krietz interviewed the taxpayer twice, on October 1, 1979 and October 4, 1979, interrogating the defendant taxpayer and demanding records as part of the Criminal Investigation conducted by Thompson with the assistance of Krietz, who was not assigned or designated for such assistance until six days after the second interrogation and demand for production of documents.[5]

8. Despite repeated requests by the Court, the Assistant United States Attorney in charge of the case for the Government failed and refused to give the Court copies of the Civil Summonses issued under Section 7602 of the Internal Revenue Code, 26 U.S.C. § 7602, by the Special Agent of the Criminal Investigation Division (CID) or by the Revenue Agent of the Civil Audit Division, so the Court could determine whether or not the CID or CAD issued and served any such Civil Summonses *before* the assignment and designation of the Civil Revenue Agent on October 10, 1979. The Court was informed that copies of these Civil Summonses could not be found despite diligent searches throughout the files and records of the U.S. Attorney's Office, and of the Internal Revenue Service, both Civil Audit Division and Criminal Intelligence Division. In the absence of copies of these Civil Summonses, and failing to receive even the dates of issuance or service of any such Civil Summonses, although the witness Thompson, the CID Special Agent, testified

---

**2.** Interesting enough to arouse the Court's skeptical curiosity is the fact that the same IRS Criminal Group Manager, Thomas W. Sullivan, made the same kind of referral acceptance on behalf of the Criminal Intelligence Division to the Civil Audit Division in *Dahlstrum,* as Group Manager of Criminal Special Agent Marc Schreiber on the same Form (IRS Form 2797) which he used here as Group Manager of Criminal Special Agent Ralph R. Thompson, and significantly also here failed to fill out the box "☐ Please assign Cooperating Officer" (Exhibit 1 to Government's Response to Court's Questions re IRS Investigation), just as he failed to do in *Dahlstrum,* 493 F.Supp. 966 at 969, f.n. 5). See *U.S. v. Dahlstrum,* 493 F.Supp. 966 (C.D. Cal.1980), *appeal dismissed,* 655 F.2d 971 (9th Cir.1981), *cert. denied,* 455 U.S. 928, 102 S.Ct. 1293, 71 L.Ed.2d 472 (1982).

**3.** See Exhibit 5 to Government's Response to Court's Questions re IRS Investigation.

**4.** Id., f.n. 3 *supra,* Exhibit 5 to Government's Response. Thomas W. Sullivan, CID's Group Manager of CID Special Agent Thompson, used the original of Exhibit 5 to request on October 9, 1979, the Civil Examination (Audit) Division to assign a Civil Revenue Agent to cooperate with CID's Criminal investigation; and Marty G. Laffer, the Civil Examination Division Group Manager of civil Revenue Agent Charles Siemer, used the carbon copy of Exhibit 5 to designate on October 10, 1979 another civil Revenue Agent, Floyd Krietz, for assignment as the civil Cooperating Officer.

**5.** That is, not until October 10, 1979. See f.n. 3, *supra,* Exhibit 5, carbon copy.

there were at least fifteen (15) such Civil Summonses issued and served, the Court cannot assume anything except that it was possible, if not probable, that at least some of these Civil Summonses were utilized by the Criminal Special Agent or the Civil Revenue Agent in support of an investigation wholly criminal in nature, in the ten-day period between the first questioning of the defendant taxpayer and the assignment and designation of the Civil Revenue Agent Krietz to assist and cooperate in the criminal investigation.

 9. Any such criminal use of Civil Summonses is not to be condoned or tolerated by the Judiciary. *United States v. La Salle National Bank,* 437 U.S. 298, 316–317 n. 18, 98 S.Ct. 2357, 2367–2368 n. 18, 57 L.Ed.2d 221 (1978), *United States v. Genser,* 595 F.2d 146, 151 (3rd Cir.1979), *cert. denied,* 444 U.S. 928, 100 S.Ct. 269, 62 L.Ed.2d 185 (1979), *United States v. Dahlstrum,* 493 F.Supp. 966, 971–973 (C.D.Cal.1980), *appeal dismissed,* 655 F.2d 971 (9th Cir.1981), *cert. denied,* 455 U.S. 928, 102 S.Ct. 1293, 71 L.Ed.2d 472 (1982).

10. As this Court aptly stated in *Dahlstrum, supra,*

"While dismissal is a strong remedy to apply, it serves as the only effective deterrent when a case reaches the criminal trial phase. This Court understands and respects the difficulties faced by the IRS in the performance of its assigned tasks. However, in view of the circumstances of this case, this Court feels compelled to dismiss the indictment with prejudice in order to preserve the interests of a taxpayer defendant subjected to this type of governmental misconduct, even though fueled only by 'institutional bad faith' and not any personal bad faith." 493 F.Supp. 966 at 975.

The *Dahlstrum* factual situation is virtually identical to the facts found here, which compels the Court to conclude that the present case is legally undistinguishable from *Dahlstrum.*

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law in addition to the Findings and Conclusions made in its oral decision rendered in open Court on July 6, 1983, all of which are being transcribed and which the Court will in due course sign and date.[6]

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**6.** As a matter of fact the Court has taken pains to sign, file and enter the transcript of the Court's oral Findings of Fact and Conclusions of Law and Decision rendered in open Court on July 6, 1983, as additional support for the within Minute Order, and on the same day it is signing, filing and entering the Minute Order, to wit, today, July 12, 1983.