T.C. Memo. 2005-189

UNITED STATES TAX COURT

PATRICK CARLIN HICKEY, ET AL.,[1] Petitioners $\underline{v}$. COMMISSIONER
OF INTERNAL REVENUE, Respondent

Docket Nos. 9582-04, 9592-04,    Filed July 28, 2005.
                9703-04, 10519-04.

Patrick Carlin Hickey, pro se.

Robert P. Gettys, for petitioner Sharon JoAnn Hickey.

Louis H. Hill, for respondent.

_____

    [1] Cases of the following petitioners are consolidated
herewith:  Patrick Carlin Hickey, docket No. 9592-04; Sharon
JoAnn Hickey, docket No. 9703-04; and Sharon JoAnn Hickey (and
Patrick C. Hickey, Intervenor), docket No. 10519-04.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  Petitioners petitioned the Court to redetermine certain determinations made by respondent as to their Federal income tax liabilities.  The Court consolidated the cases for purposes of trial, briefing, and opinion.  Inasmuch as petitioner Sharon JoAnn Hickey is involved in these cases because she filed joint 1992 and 1993 Federal income tax returns with petitioner Patrick Carlin Hickey, we hereinafter use the singular "petitioner" to refer solely to Patrick Carlin Hickey.  We refer to Sharon JoAnn Hickey as "Hickey".  Unless otherwise noted, section references are to the applicable versions of the Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure.

In docket Nos. 9582-04 and 9592-04, petitioner petitioned the Court on June 8, 2004, to redetermine respondent's determination of the following deficiencies, additions to tax, and penalties:

| | | Additions to tax | | Penalty |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 | Sec. 6663 |
| 1989 | $23,621 | $5,201 | $507 | $17,716 |
| 1990 | 2,982 | 671 | 0 | 2,237 |
| 1991 | 23,964 | 5,392 | 48 | 17,495 |
| 1992 | 10,728 | 0 | 0 | 8,046 |
| 1993 | 2,674 | 165 | 318 | 2,006 |

Respondent reflected this determination in two notices of deficiency issued to petitioner on March 25, 2004.  Respondent also determined in the notices of deficiency that petitioner is

liable under section 6651(a)(2) for additions to his 1989, 1990, 1991, and 1993 taxes in amounts to be determined. In answering petitioner's petition in docket No. 9582-04, respondent conceded that petitioner is not liable for the section 6651(a)(1) and (2) additions to tax determined for 1989.

In docket No. 9703-04, Hickey petitioned the Court on June 10, 2004, to redetermine respondent's determination of the following deficiencies, additions to tax, and penalties:

|  |  | Additions to tax | | Penalty |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 | Sec. 6663 |
| 1992 | $10,728 | $0 | $0 | $8,046 |
| 1993 | 2,674 | 165 | 318 | 2,006 |

Respondent reflected this determination in a single notice of deficiency issued to Hickey on March 25, 2004. Respondent also determined in the notice of deficiency that Hickey is liable under section 6651(a)(2) for an addition to her 1993 tax in an amount to be determined. In answering Hickey's petition in docket No. 9703-04, respondent conceded that she is not liable for the section 6663 penalties determined for 1992 and 1993 and alleged as to 1992 that she is liable for a $2,145.60 accuracy-related penalty under section 6662(a) and (d) for substantial understatement.

In docket No. 10519-04, Hickey petitioned the Court on June 21, 2004, for relief under section 6015 from joint liability for any amount that she is determined to be liable in docket No. 9703-04. On March 25, 2004, the Commissioner had issued to

Hickey a final notice of determination denying her any such relief.

Following a short trial on these cases, inclusive of an evidentiary hearing on a motion by petitioners to suppress all documents and testimony (collectively, proffered evidence) related to the Commissioner's determinations and allegations of fraud, we decide whether we shall grant that motion to suppress.[2] We hold that we shall not. Given this holding, petitioners concede all other issues in these cases, including their liability for the deficiencies, additions to tax, penalties, and accuracy-related penalties determined by respondent (except to the extent conceded by respondent in his answers), and whether Hickey is entitled to her requested relief under section 6015.

FINDINGS OF FACT

Some facts were stipulated. We incorporate herein by this reference the parties' stipulation of facts and the exhibits submitted therewith. We find the stipulated facts accordingly.

---

[2] Petitioners' motion was filed as a motion to dismiss for cause, or, alternatively, to suppress the proffered evidence. A dismissal of the deficiency cases generally would require that the Court enter decisions finding that the deficiencies in tax, additions thereto, and penalties are the amounts determined in the notices of deficiency. See Estate of Ming v. Commissioner, 62 T.C. 519 (1974); see also sec. 7459(d); cf. Wagner v. Commissioner, 118 T.C. 330, 331-332 (2002). Given that result, which petitioners obviously do not desire, we consider in the deficiency cases only so much of their motion as relates to suppression of evidence. We consider their motion in its entirety in the remaining case.

Petitioners resided in Kentucky when their petitions were filed with the Court. They were married on December 31, 1991, and they have been husband and wife ever since. At all relevant times, petitioner has been a licensed practicing attorney in Kentucky.

Petitioner filed his 1989 and 1990 Federal income tax returns on November 18, 1991, using the filing status of "Single". Those returns reported that petitioner had one dependent (a daughter) for 1989 and two dependents (a son and daughter) for 1990, and total income of $35,737 for 1989 and $13,864.30 for 1990. Petitioner filed his 1991 Federal income tax return on December 7, 1992, using the filing status of "Single". That return reported that petitioner had two dependents (a son and a daughter) and total income of $15,532. Petitioners filed a joint 1992 Federal income tax return on April 15, 1993. That return reported that petitioners had two dependents (petitioner's son and daughter) and total income of $16,633. Petitioners filed a joint 1993 Federal income tax return on November 4, 1994. That return reported that petitioners had two dependents (petitioner's son and daughter) and total income of $36,696. Almost all of the total income reported on these five returns was attributable to petitioner's practice as a self-employed attorney. The 1990 and 1991 returns reported that petitioner owed tax of $2,125.17 and $3,045.47, respectively. The 1992 and 1993 returns reported that

petitioners owed tax of $2,566 and $6,420.50, respectively. Petitioner did not submit with his 1990, 1991, 1992, or 1993 return the amount of tax reported as owed.

In December 1992, the Commissioner assigned Michael Cox (Cox), a revenue officer in the Commissioner's collection division, to collect assessed Federal income taxes shown in the Commissioner's records to be owed by petitioner. Cox was not assigned to audit or examine any of the returns underlying those taxes, nor did he do so. On May 6, 1993, Cox concluded that the taxes were uncollectible, and he closed the case as such. Cox's conclusion was based primarily on his receipt from petitioner of information on his finances and Cox's finding at the local courthouse of no assets recorded in petitioner's name.

In 1994, John Voorhees (Voorhees), a special agent in the Commissioner's Criminal Investigation Division (CID), was told by a law enforcement agency that it had been informed that Hickey was selling prescription drugs illegally. Later, in May 1994, Voorhees spoke to one of the agency's confidential informants and was told that petitioners kept a large quantity of narcotics at their home and lived a lavish lifestyle. The informant told Voorhees that petitioners had paid for a lavish wedding and honeymoon in Ireland and that petitioners had primarily used cash to pay for home improvements (e.g., a Jacuzzi and expensive windows) and entertainment expenses (e.g., stereo equipment and

large television sets).  The informant told Voorhees that either petitioner or Hickey had told the informant that petitioners kept large amounts of cash in petitioner's car.  On the basis of this information, Voorhees began a preliminary investigation of petitioners to determine whether he should begin a formal criminal investigation.  Voorhees closed the preliminary investigation on or about September 18, 1994, concluding that he had insufficient information to support a criminal investigation of petitioners.  In connection with that closing, Voorhees contacted Cox.  Voorhees told Cox the information that Voorhees had received from the confidential informant and told Cox that he should consider looking into the ability of petitioner to pay his delinquent Federal income taxes, as he may be financially able to do so.  At no time during that conversation, nor at any other time, did Voorhees advise or direct Cox to do any specific work as to petitioner from either a civil or criminal point of view.

On or about October 11, 1994, Cox reopened his collection case as to petitioner's delinquent Federal income tax liability. Seventeen days later, Cox visited petitioner's residence, a two-story house that he and his ex-wife had built in 1976 for $47,000, where Cox observed a fairly new Jeep Wrangler in the driveway, a new Jacuzzi in the backyard, and a new front door. Petitioner did not answer Cox's knock at the door, and Cox left his business card at the house without speaking either to

petitioner or to Hickey. On October 31, 1994, petitioner stopped by Cox's office without prior notice, and petitioner completed in part and signed under penalties of perjury a Form 433-A, Collection Information Statement for Individuals, and a Form 433-B, Collection Information Statement for Businesses (collectively, financial statements). Cox informed petitioner at that meeting that all relevant information on the financial statements had to be completed in full. The financial statements did not indicate that petitioner owned a house or a vehicle. Petitioner told Cox that petitioner did not own a vehicle, that his wife owned one vehicle subject to a lien, and that his daughter owned the house in which he lived although, he stated, she was a law student and tended not to stay at the house. Petitioner informed Cox that the house had previously been transferred to petitioner's mother when he divorced his ex-wife and that his mother transferred the house to the daughter when the mother died in 1989. Petitioner informed Cox that petitioner and the daughter split the cost of improvements made to the house.

On November 3, 1994, Cox researched the records of the Department of Motor Vehicles and learned that Hickey was listed as the owner of two unencumbered vehicles, a 1993 Jeep Wrangler and a 1993 Jeep Cherokee, with a total assessed value of $42,200. Cox also researched the pertinent real property records and

learned that petitioner's daughter was listed as the owner of the referenced house, which then was assessed at $108,500. Cox did not find at either place the recording of any asset in petitioner's name.

As of November 4, 1994, the Commissioner's records showed that petitioner owed more than $28,000 in back taxes, interest, and penalties. On that day, petitioner gave Cox some additional financial information, including lien information for the Jeep Wrangler, and Cox informed petitioner that his financial status as reported to Cox allowed petitioner to pay at least $400 per month towards his Federal income tax liability. Petitioner replied that he must not have given Cox all of his actual financial information, as petitioner indicated he was unable to make that minimum payment, and requested additional time to disprove the calculated minimum payment. Later on that day, Cox recorded in his "Investigative History Sheet" (history sheet) his plan of action for the case. His plan stated:

> discuss case with CID for possible fraud, I believe TP
> has submitted a fraudulent financial statement with
> regards to vehicles, Income and possibly Real Property.
> I also believe that his 30-9312 could also be
> fraudulent with regards to his dependents and income.
> TP has $35,000 in vehicles which are free and clear and
> I don't see where his financial statements or Income
> tax returns support this.

As of this time, Cox did not believe that he had the requisite firm indication of fraud that would support referring petitioner's case to CID. Instead, Cox thought, he should

investigate further to determine whether the recording of the house and vehicles in names other than petitioner was in fact proper. Cox also was awaiting receipt of additional financial information that petitioner had told him would be forthcoming. Cox was not sure at this time that he would refer petitioner to CID but thought that he should discuss with CID his belief that petitioner's case was a potential fraud case. Cox had a suspicion at the time that petitioner was not being truthful with him.

On November 7, 1994, petitioner met with Cox again and gave him more financial information. Petitioner informed Cox at this meeting that petitioner's 1994 income to date was $22,180, rather than $29,000 as previously reported. Petitioner also changed certain line items that he had previously reported on the financial statements. Petitioner and Cox had no further meetings after this date.

On January 3, 1995, petitioner filed for bankruptcy under chapter 7 of the U.S. Bankruptcy Code. On the same day, Cox received a copy of that filing.

On or about February 8, 1995, Cox attempted to contact petitioner's daughter but was unable to do so. On February 8, 1995, Cox spoke to petitioner's ex-wife as to the house in which petitioner lived and the fact that it was listed in the name of the daughter. Petitioner's ex-wife informed Cox that she did not

realize that the house was in the daughter's name and that the daughter was a law student who worked part time. Petitioner's ex-wife informed Cox that the daughter and son (of petitioner and his ex-wife) lived with the ex-wife and that she did not believe that the daughter could afford to pay any expenses related to the house. Following this conversation, Cox believed that he should discontinue his case as to petitioner and refer him to CID for criminal prosecution.

Shortly before April 21, 1995, Cox met with Voorhees for the first time after reopening the collection case and discussed with him whether the facts of petitioner's case, as Cox believed them to be, supported his making of a criminal referral of petitioner to CID. On April 21, 1995, Cox prepared the requisite paperwork to refer petitioner's case to CID, and Cox forwarded the case to CID. The essence of Cox's referral was that petitioner was evading the payment of his assessed Federal income tax liability in that (1) he claimed that he did not own the house in which he lived; (2) the house was in the name of his teenage daughter, who did not work full time; (3) his ex-wife, the daughter's apparent custodial parent, had no knowledge of any such ownership by the daughter; and (4) the house, if in fact owned by petitioner, could be used to pay his Federal income tax liability. On or about June 23, 1995, Voorhees began the criminal investigation of petitioner pursuant to Cox's referral and recorded for the first

time in the Commissioner's computer system that a criminal investigation of petitioner was underway. On June 28, 1995, Voorhees interviewed petitioner for the first time.

Subsequently, petitioner was indicted by the United States for various tax offenses for 1989 through 1993, including for each year income tax evasion under section 7201. During that proceeding (criminal case), petitioner moved the District Court to suppress evidence that he claimed was obtained in violation of his constitutional rights. An evidentiary hearing was held as to the motion, and on January 5, 1999, a magistrate judge issued a report and recommendation (R&R) denying it. Nine days later, petitioner objected to the R&R, and 18 days after that, the United States responded to those objections. On February 9, 1999, the District Court overruled petitioner's objections as moot, accepted the R&R, and denied petitioner's motion to suppress as moot. The District Court's actions followed notification that petitioner would be pleading guilty to part of the indictment. On or about March 8, 1999, petitioner pleaded guilty to a single count of section 7201 tax evasion for 1993. The other counts in the indictment were dismissed upon motion by the United States.

After he had served his sentence stemming from his plea, petitioner on or about November 5, 2002, petitioned the District Court for a writ of error coram nobis pursuant to 28 U.S.C. sec.

1651 (2000).  Petitioner asserted that the petition should be granted because the Commissioner had developed the criminal case in the guise of a civil investigation even after the civil investigation had uncovered firm evidence of fraud.  Petitioner asserted that one of the Commissioner's civil investigators (Cox) had improperly collaborated with one of the Commissioner's criminal investigators (Voorhees) before petitioner's case was referred to CID.  Petitioner asserted that the Commissioner had improperly conducted a criminal examination under the guise of a civil examination.  The District Court denied petitioner's petition, and that denial was affirmed on appeal.  See Hickey v. United States, 92 Fed. Appx. 317 (6th Cir. 2004).[3]

OPINION

Petitioners move the Court to exclude from evidence all of the proffered evidence because, they argue, Cox and Voorhees disregarded petitioners' constitutional rights by criminally investigating petitioner under the guise of a civil examination

---

[3] While the Court of Appeals for the Sixth Circuit generally disfavors the citation of unpublished decisions, the rules of that court allow such a citation for the purpose of establishing res judicata, estoppel, or the law of the case.  See 6th Cir. R. 28(g).

in violation of 2 Audit, Internal Revenue Manual sec. 4565.21(1),

at 14,382 (IRM section 4565.21(1)) and section 7605(b).[4]

_____

[4] IRM sec. 4565.21(1) states in relevant part:

If, during an examination, an examiner uncovers a
potentially fraudulent situation caused by the taxpayer
and or the preparer, the examiner shall discuss the
case at the earliest possible convenience with his/her
group manager.  If the group manager concurs, he/she
will discuss the case with the District Fraud
Coordinator (DFC) who, together with the group manager,
will provide guidance to the examiner on how to
proceed.  Once there is a firm indication of criminal
fraud all examination activity shall be suspended.  If
the case meets the criminal criteria, found in the Law
Enforcement Manual (or locally developed criminal
criteria) a referral will be made to Criminal
Investigation (CI) via Form 2797.  A firm indication of
fraud is more than mere suspicion or first indication
of fraud, it is a factual determination which must be
made on a case by case basis.  This determination will
be made by the DFC and the group manager on each case.
Under no circumstances will an examiner or group
manager obtain advice and/or direction from CI for a
specific case under examination.  * * *

Although this section on its face applies solely to "examiners",
respondent concedes that its provisions also applied to Cox.

Sec. 7605 provides in relevant part:

SEC. 7605.   TIME AND PLACE OF EXAMINATION.

(a) Time and Place.--The time and place of
examination pursuant to the provisions of section
6420(e)(2), 6421(g)(2), 6427(j)(2), or 7602 shall be
such time and place as may be fixed by the Secretary
and as are reasonable under the circumstances.  In the
case of a summons under authority of paragraph (2) of
section 7602, or under the corresponding authority of
section 6420(e)(2), 6421(g)(2), or 6427(j)(2), the date
fixed for appearance before the Secretary shall not be
less than 10 days from the date of the summons.

(continued...)

Petitioners assert that Cox violated IRM section 4565.21(1) when he continued a civil examination after finding a firm indication of fraud.  Petitioners assert that Cox violated IRM section 4565.21(1) when he spoke to Voorhees about the making of petitioner's criminal referral to CID.  Petitioners assert that Cox violated section 7605(b) by conducting a second examination of petitioner's books and records.

With the exception of petitioners' assertion concerning section 7605(b), petitioners' two assertions are the same assertions that petitioner made in the criminal case and that were not accepted by either the District Court or the Court of Appeals for the Sixth Circuit.  See Hickey v. United States, supra.  Respondent notes that petitioners' current assertions on the applicability of IRM section 4565.21(1) are similar to the assertions that petitioner made in the criminal case in his motion to suppress and argues that the District Court's disposition of that motion may estop petitioners from making those same assertions here.  Respondent makes no mention of the fact that petitioner also made the same assertions in connection

---

⁴(...continued)
     (b) Restrictions on Examination of Taxpayer.--No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

with his petition for a writ of error coram nobis and that neither the District Court nor the Court of Appeals for the Sixth Circuit accepted those assertions. See <u>Hickey v. United States</u>, <u>supra</u>.

We believe that the courts' decisions in <u>Hickey v. United States</u>, <u>supra</u>, preclude petitioners from repeating in this proceeding the same assertions that petitioner made in support of his petition for writ of error coram nobis. That petition contended that Cox improperly collaborated with Voorhees before petitioner's case was submitted for criminal referral and that Cox and Voorhees developed a criminal case against petitioner in the guise of a civil examination even after Cox had uncovered in the civil investigation firm evidence of fraud. <u>Id.</u> The District Court rejected those contentions and denied the petition.[5] The Court of Appeals for the Sixth Circuit affirmed that action, stating: "the District Court correctly concluded that the evidence of record does not support * * * [petitioner's] contention that IRS agents developed its criminal case against him in the guise of a civil investigation even after the civil investigation had uncovered firm evidence of fraud." <u>Id.</u> at 319. "[W]hen an issue of ultimate fact has once been determined by a

---

[5] The District Court may also have rejected the same assertions when it denied petitioner's motion to suppress. The record is not clear as to whether the court denied that motion on its merits or because it was moot.

valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970); accord Hammer v. INS, 195 F.3d 836, 840 (6th Cir. 1999); see also Jones v. Squier, 195 F.2d 179, 180 (9th Cir. 1952) ("The nature of the writ of error coram nobis is that it is a civil proceeding in which the judgment of the court is res judicata at least of the issues tendered and joined."); cf. United States v. Balistrieri, 606 F.2d 216, 221 (7th Cir. 1979) ("a coram nobis motion is a step in a criminal proceeding yet is, at the same time, civil in nature and subject to the civil rules of procedure").[6]

Even if petitioners were entitled in this case to repeat petitioner's previous assertions, they would still not prevail in that we disagree with each of their three assertions. Our decision as to whether Cox had a firm indication of fraud within the meaning of IRM section 4565.21(1) and failed to suspend his examination of petitioner turns on the facts in the record at hand. See United States v. McKee, 192 F.3d 535, 543 (6th Cir. 1999). Petitioners bear the burden of proof. Id. at 542; cf. United States v. Peters, 153 F.3d 445, 451 (7th Cir. 1998);

[6] Although the decisions relating to petitioner's petition for writ of error coram nobis were not raised by respondent as an affirmative defense, a Federal court may raise the issue of res judicata sua sponte. See Holloway Constr. Co. v. U.S. Dept. of Labor, 891 F.2d 1211, 1212 (6th Cir. 1989); see also Monahan v. Commissioner, 109 T.C. 235, 250 (1997) ("This Court may raise the doctrine of issue preclusion sua sponte.").

United States v. Powell, 835 F.2d 1095, 1098 (5th Cir. 1988). While they argue that Cox had the requisite firm indication of fraud by virtue of the fact that he entered in the history sheet that "I believe TP has submitted a fraudulent financial statement with regards to vehicles, Income and possibly Real Property", we do not believe that this entry establishes that Cox had a firm indication of fraud as to petitioner within the meaning of IRM section 4565.21(1). We read that entry in the context of the record as a whole as expressing Cox's then serious suspicion that petitioner had engaged in an act that could be fraudulent but which had to be explored further to determine whether it was in fact fraudulent. Such a general suspicion of fraud is not a firm indication of fraud for purposes of IRM section 4565.21(1). See United States v. Peters, supra at 455-456 (firm indication of fraud in the context of IRM section 4565.21(1) is different from an initial indication of fraud and is more than a mere suspicion of fraud); cf. United States v. McKee, supra at 543; United States v. Caldwell, 820 F.2d 1395, 1402-1403 (5th Cir. 1987).

Our reading of that entry is supported by Cox's credible testimony that he did not at the time of the entry believe he had the requisite firm indication of fraud to refer the matter to CID. Our reading is also supported by our finding that Cox did not know when he made the entry whether petitioner's omission of the house and vehicles from his financial statements was proper.

Upon his receipt of the financial statements from petitioner, Cox did not have clear evidence of tax fraud such that the only reasonable conclusion was that petitioner willfully set out to evade his Federal tax liability. Given that Cox knew at the time of the entry that the house and vehicles were actually titled in the public records in names other than petitioner's, the question was whether one or more of those assets was actually owned by petitioner and thus inappropriately omitted from his financial statements. Cox needed to, and actually did, perform further investigation of each asset to make that determination. It was only after he completed that and other further investigation that he verified and firmly believed that petitioner's financial statements were fraudulent and deserving of a referral of petitioner to CID. By analogy to an observation of the Court of Appeals for the Sixth Circuit in United States v. McKee, supra at 543, when faced with a similar setting, only the most overzealous revenue officer would have considered referring petitioner's case to CID upon receiving petitioner's financial statements which on their face did not appear to be trustworthy but which in fact reflected the ownership of the house and vehicles as of public record. Given the unanswered question as to whether the true owner of each of those assets was the individual who was actually listed in those records, or was in fact petitioner, we do not believe that Cox had such a firm indication of fraud that

required him to refer petitioner's case to CID in face of that unanswered question. See id.; see also United States v. Peters, supra at 455; United States v. Caldwell, supra at 1402-1403; Groder v. United States, 816 F.2d 139, 143 (4th Cir. 1987); United States v. Kaatz, 705 F.2d 1237, 1243 (10th Cir. 1983). As noted by the Court of Appeals for the Sixth Circuit in United States v. McKee, 192 F.3d at 544, courts must defer to the discretion of a civil agent as to whether and when a criminal investigation is warranted. See also United States v. Caldwell, supra at 1402; cf. United States v. Michaud, 860 F.2d 495, 498-499 (4th Cir. 1988).

Nor do we believe that a violation of IRM section 4565.21(1) occurred when Cox spoke to Voorhees just before Cox's criminal referral of petitioner. While petitioners invite the Court to read IRM section 4565.21(1) narrowly to treat any prereferral contact between the two as a violation of IRM section 4565.21(1), we decline that invitation and apply that section as written to preclude "advice and/or direction from CI for a specific case under examination." Credible evidence in the record establishes, and we find as a fact, that Cox's conversation with Voorhees did not involve advice and/or direction from Voorhees as to Cox's criminal referral of petitioner. The conversation focused solely on whether CID would accept Cox's criminal referral of petitioner if Cox expended the time and energy to make a referral on the

basis of the facts as he believed them to be.  Cox as of the time of the conversation had gathered all information that he believed was necessary to show that petitioner owned one or more of the relevant assets and that petitioner had fraudulently omitted one or more of those assets from his financial statements.  The record does not establish that Cox during the conversation sought or received the advice or direction of Voorhees as to any information that Cox needed to obtain to build a better criminal (or civil) case against petitioner.  In fact, the record does not establish that Cox during or after his conversation with Voorhees acquired any information at all from or about petitioner.[7]

As to petitioners' third assertion, they argue that Cox violated section 7605(b) by conducting more than one examination of petitioner.  We disagree.  Pursuant to section 7605(b), the Commissioner generally may inspect a taxpayer's books or records for a taxable year only once.  "'[T]he standard is whether the examination or investigation sought by the IRS is unnecessarily duplicative of some prior examination'".  United States v. Balanced Fin. Mgmt., Inc., 769 F.2d 1440, 1446 (10th Cir. 1985) (quoting United States v. Davey, 543 F.2d 996, 1000 (2d Cir. 1976)).  Petitioners have not demonstrated that the Commissioner

_____

[7] While petitioners ask the Court to conclude that Voorhees directed Cox to reopen his collection case, we do not find that such was so.  Nor do we find, as petitioners ask us to, that Cox and Voorhees participated in a "joint collaborative effort" in preparing the referral of petitioner to CID.

met this standard when Cox reopened petitioner's collection case or that the Commissioner otherwise improperly inspected petitioner's books or records more than once for a taxable year. Nor have petitioners cited any authority (and we are not aware of any such authority) that states that the Commissioner may not reopen a closed collection case on the basis of information that at the time of reopening tends to show that the amount previously considered uncollectible may in fact be collectible. Given the additional fact that petitioner never resisted giving information to Cox after he had reopened his collection case, but in fact gave it to him voluntarily, we conclude that Cox by reopening the collection case did not perform a prohibited second inspection of petitioner's books and records in violation of section 7605(b). See United States v. Baker, 451 F.2d 352 (6th Cir. 1971); cf. Miller v. Commissioner, T.C. Memo. 2001-55.

We sustain respondent's determinations except to the extent of his concessions. We have considered all arguments made by the parties and have rejected those arguments not discussed herein as meritless. In order to reflect the foregoing, including respondent's concessions,

An order will be issued denying petitioners' motion, and decisions will be entered under Rule 155.