UNITED STATES of America,
Plaintiff–Appellee,

v.

Edward R. KNIGHT,
Defendant–Appellant.

No. 89–4571
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 14, 1990.
Rehearing Denied April 11, 1990.

C. Michael Hill, Juneau, Judice, Hill & Adley, Lafayette, La., E.M. Quijano, Adams & Reese, Baton Rouge, La., for defendant-appellant.

William J. Flanagan, Asst. U.S. Atty., Joseph S. Cage, Jr., U.S. Atty., Duro J. Duplechin, Jr., Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before GEE, WILLIAMS and JOLLY, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellant, Edward R. Knight, was convicted by a jury of making and subscribing false individual income tax returns in 1981 and 1982, and a corporate income tax return for Knight Specialities, Inc., his wholly owned corporation, for its tax year ending February 28, 1982. He was sentenced to imprisonment for two years, suspended and conditioned upon four months confinement at a Salvation Army Halfway House, two years probation, and a $30,000 fine. The appeal is timely.

Appellant raises four issues on appeal:

1. Was there sufficient evidence to sustain a conviction?

2. Did the district court err in denying defendant's motion to suppress oral statements made by him to an Internal Revenue Service agent?

3. Did the prosecutor comment improperly during closing argument on defendant's failure to testify?

4. Did the district court abuse its discretion in admitting evidence of earlier payoffs of gambling debts by appellant?

### I.

The evidence disclosed that appellant deducted large payments to two named individuals, Kenny Duay and Golden Stutes, on the corporate tax return as "commission" expenses. These two persons on their returns did not report the receipt of any commissions. Both of the named individuals reported to the IRS agent that the payments received from the corporation were not commissions but were for appellant's personal gambling debts. One of the two bookmakers testified that he received checks totalling $86,000 drawn on the Knight Corporation, between September 1981 and January 1982 in payment of gambling debts. The other bookmaker testified that he received corporate checks between November 1978 and January 1982 totalling $138,850 in payment of gambling debts.

There is no dispute that these "commission" charges were in payment of gambling debts. The only disputed evidence is appellant's testimony that he thought the payments by the corporation were being added to his "personal loan account". The proof is that the checks were "coded" by the corporation as commission expenses. It is obvious that the jury did not believe his explanation that he did not know this or have anything to do with it.

The two counts involving his personal income tax returns were obviously related in that the payment of these gambling debts by the corporation constituted unreported constructive dividend income to Knight and should have been reported as such on his individual income tax returns.

An overall reading of the record makes it clear that the jury had before it ample evidence which, if believed, sustains the convictions on all three counts.

### II.

Before trial, appellant filed a motion to suppress oral statements he had made to IRS Agent Leblanc. The district court denied the motion to suppress. No issue is raised as to which specific words in the statement were prejudicial. The attack upon the admission of the statement is more basic. It is urged that Agent Leblanc had already made a fraud determination at the time he talked to appellant but did not tell him so. Rather he treated the case still as simply an IRS investigation of tax returns to see if they were correct. At the hearing on the pretrial motion when the court asked whether the critical statements were inculpatory, the reply only was that they were assumed to be because the government planned to use them.

Thus, we do not evaluate the precise content of the statements because that issue is not raised. Instead, appellant urges that the statements were obtained by the agent in violation of IRS rules since the examiner had already "discovered a firm indication of fraud", at which point under the rule the investigation is to cease and the case is to be turned over to the Crimi-

nal Investigation Division. Further, it is claimed that the statement was obtained by fraud and deceit by the agent not telling appellant that in his mind at this time there was a firm indication of fraud.

We do not find the denial of the motion to suppress by the district court in error.

■ As to the alleged violation of the IRS Guidelines, the guidelines are contained in the IRS Manual, an internal document concerning the procedures of the IRS. There is ample authority that evidence obtained in violation of manual guidelines is not automatically inadmissible. The issue, as we indicated in *United States v. Powell*, 835 F.2d 1095, 1101 (5th Cir.1988), is whether a manual violation may show bad faith on the part of an agent.

The only case cited by appellant with respect to the issue of the violation of the IRS Manual is *United States v. Toussaint*, 456 F.Supp. 1069 (S.D.Tex.1978). This case, however, is prior to the Supreme Court decision in *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), in which the Court held that it was not error to deny the suppression of evidence obtained in violation of IRS Regulations. The Supreme Court in its opinion said: "... a rigid application of an exclusionary rule to every regulatory violation could have a serious deterrent impact on the formulation of additional standards to govern prosecutorial and police procedures." 440 U.S. at 755, 99 S.Ct. at 1473.

■ It follows that the nature of the issue in this case is not the possible violation of the IRS Manual by the agent but is the more fundamental issue appellant also raises that the statement was obtained through "fraud, trickery, and deceit". As to this broader charge of fraud, trickery, and deceit, the district court considered the claim specifically and found that the government had no advantage in the situation under the facts of the case. The defendant had as much information about what was going on and what the problem or was going to be as the government did. Thus, while it is clear that evidence obtained through fraud, trickery, and deceit

is not admissible in criminal tax prosecutions, *United States v. Powell*, 835 F.2d at 1098, we made clear in *United States v. Prudden*, 424 F.2d 1021, 1033 (5th Cir.), *cert. denied*, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970), that the mere failure of a revenue agent to warn a taxpayer that the investigation may result in criminal charges is not fraud, trickery, and deceit.

■ We did find in *United States v. Tweel*, 550 F.2d 297 (5th Cir.1977), that the revenue agent had intentionally misled the taxpayer as to the nature of the audit. In response to a question by the taxpayer he denied by implication that there were criminal overtones to the investigation. Thus, in that case the agent intentionally misled the taxpayer. Appellant concedes that the *Tweel* case is not controlling. Agent Leblanc made no affirmative misrepresentation and left no inquiry of the taxpayer unanswered. Taxpayer complains only of the failure to disclose tentative calculations Leblanc made as to tax based upon fraud. We review the district court's finding as to fraud, trickery, and deceit under the clearly erroneous standard, *United States v. Caldwell*, 820 F.2d 1395, 1399 (5th Cir.1987), and the finding of the district court was not clearly in error.

### III.

■ Appellant's third issue involves the claim that the prosecutor impermissibly commented in his closing argument on defendant's failure to testify. This claim stems from the testimony of Mr. Hamza, who was appellant's accountant.

The statement by the prosecutor in closing referred to a chart listing some 1400 accounts of the company as of 1985. All the prosecutor said was that the witness, Mr. Hamza, was still in custody of the corporate records and that he did not bring in an earlier chart of the accounts, one that was relevant to the years involved in the charges. On the Hamza cross-examination it had been established that the chart of accounts introduced (over the objection of the government) was not in use during the years 1981 and 1982. The prosecutor then

had asked without objection if the accountant had brought the chart of accounts used during that earlier period and he replied that he had not.

The statement by the prosecutor, then, at closing argument constituted a reference to the evidence introduced by the witness, not to actual lack of testimony of the appellant. At the time of the statement in closing argument a motion was made for a mistrial. The assertion was that the statement shifted the burden of proof to appellant and was a comment upon appellant's failure to testify.

Pursuant to the objection the court gave a curative instruction to the effect that it was improper for the government to suggest that the appellant could have produced an additional exhibit or any additional evidence or additional witness to support the witness' testimony. So the jury was instructed to disregard the statement by the prosecution.

Assuming that the district court was correct in deciding that the argument was in error, it was not a blatant challenge against a constitutional right of appellant. It properly could be cured by curative instruction, as it was, and in any event the record reveals that it was harmless error in view of the overwhelming evidence that appellant had to know how these many large checks for gambling debts were being treated in the corporate accounting.

### IV.

The district court admitted in evidence other instances of appellant paying personal gambling debts to a third bookie, Rogers, and also payments to Stutes, one of the two bookies involved in the counts against appellant. The district court in its discretion admitted the evidence under Fed. R.Evid. 404(b). It is clear under that rule that the district court did not abuse its discretion in finding that the evidence was relevant to an issue other than defendant's character and that its probative value was not outweighed by prejudice. The court found that the payments were relative to appellant's intent or absence of mistake since appellant had told agent Leblanc that he did not know the payments for his personal gambling expenses had been coded as commission expenses. These additional expenses were also improperly deducted on the corporate tax returns.

As the government points out, this evidence was relevant in evaluating appellant's claim of a 14 month lack of knowledge of the accounting methods of his business months because it extended that time period to three years. Since the evidence showed a continuing course of conduct, and was not directed at appellant's character, it was not unduly prejudicial. Certainly it was not prejudicial in showing dealings with bookmakers. There was ample evidence of the dealings with bookmakers with respect to the payments which were involved in the criminal indictment counts under which appellant was prosecuted.

We find that appellant has failed to establish grounds for a reversal of the jury verdict and the decisions of the district court.

AFFIRMED.