**UNITED STATES of America, Appellee,**

v.

**Dale M. GRUNEWALD, Appellant.**

**No. 92–2710.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1992.

Decided March 3, 1993.

Rehearing Denied April 15, 1993.

532

William S. Smith, Des Moines, IA (William Sidney Smith and Gary A. Robinson, on the brief), for appellant.

Scott A. Schumacher, Washington, DC (James A. Bruton, Robert E. Lindsay, Alan Hechtkopf, Scott A. Schumacher and Gene W. Shepard, on the brief), for appellee.

Before MAGILL and BEAM, Circuit Judges, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

Dale M. Grunewald appeals from his conviction by jury trial on three counts of income tax evasion, in violation of 26 U.S.C. § 7201. Grunewald challenges the district court's [1] rulings on the suppression of evidence and the production of an Internal Revenue Service agent's notes. Grunewald also challenges the court's jury instruction on the element of willfulness. We affirm the judgment of the district court in all respects.

I.

Grunewald is a physician who practiced medicine in the Medical Services Partnership from 1975 through 1987. The partnership agreement provided that the income from the medical services of the partners would be divided equally among the partners. All fees for medical services, unless otherwise agreed, were to be deposited into the partnership account, and the partner-

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

ship income from each month was to be divided equally among the partners. Grunewald was in charge of maintaining the partnership books and records, and was solely responsible for calculating and paying the partners their respective partnership draws.

In 1983, Grunewald was appointed by Valley Medical Services, P.C., as medical director of the Mercy Health and Human Services (Mercy) Skywalk Clinic. Payments for Grunewald's services were made to Valley Medical Services which, in turn, paid Grunewald. Grunewald placed this money into the partnership account. In January 1985, Grunewald contracted directly with Mercy to become the medical marketing consultant for all Mercy clinics. Payments for these services, as well as all 1099 forms, were sent directly to Grunewald's home; Grunewald's contract with Mercy provided that Grunewald was responsible for paying all applicable taxes. It is Grunewald's failure to report his annual salary of $63,000 from Mercy in 1985, 1986, and 1987 which was at issue in the criminal trial.[2]

Grunewald did not deposit the Mercy salary checks into the partnership account. Nor did he enter the payments in the partnership books and records. Rather, he endorsed each of the checks and deposited them into his personal bank account. Grunewald testified that he believed that his work as a marketing consultant for Mercy did not qualify as medical services and, therefore, the income from Mercy was not partnership income. Midway through 1985, Grunewald's partners noticed that their income had decreased, and they confronted Grunewald. Grunewald's partners acquiesced to Grunewald's argument that the income from Mercy was not partnership income.

The accountant who prepared the tax returns for the partnership and for each of the individual partners relied solely upon information provided to him by Grunewald. Grunewald did not inform the accountant that he had received any income from Mercy. Nor did he inform the accountant that

there was $63,000 in income each year that was not reflected in the partnership books and records.

The investigation of Grunewald's income taxes began in May of 1987, when one of Grunewald's partners approached a patient, who was the Chief of Examination, Internal Revenue Service (IRS). This individual was informed that Grunewald was not depositing money received from Mercy in the partnership account and that Grunewald was not reporting this income on his personal tax returns. In May of 1988, IRS Agent Delperdang was assigned to audit Grunewald's 1985 tax return. Agent Delperdang was specifically requested to determine whether Grunewald's partner's allegations were true, or merely a result of animosity toward Grunewald. Agent Delperdang's audit, begun in September of 1988, included a meeting with one of Grunewald's partners, three interviews with Grunewald (two of which Grunewald's accountant attended), a bank deposit analysis, analyses of other books, records, and tax returns from 1984 through 1987, provided by Grunewald and, eventually, a review of all canceled checks issued to Grunewald by Mercy from 1985 through 1987.

Throughout Agent Delperdang's investigation, Grunewald assured Agent Delperdang that his salary from Mercy had been deposited into the partnership account, and had been reported to the IRS by the partnership. However, upon being informed by Mercy that Agent Delperdang had requested all canceled checks which had been issued to Grunewald, Grunewald contacted Delperdang and told him that the income from Mercy might not have been reported. On February 16, 1989, the day of Agent Delperdang's last contact with Grunewald, Grunewald admitted for the first time that the income from Mercy had not been treated as partnership income. On February 24, 1989, Agent Delperdang received the canceled checks from Mercy. Upon his determination that there was a substantial deficiency with regard to Grunewald's 1985, 1986, and 1987 income, Agent Delperdang decided that there were firm indications of

---

**2.** In 1985, Grunewald failed to report only $42,- 000 of the total amount.

fraud by Grunewald. In March of 1989, Agent Delperdang referred the case to the Criminal Investigation Division (CID) of the IRS without further contact with Grunewald. Agent Delperdang had previously contacted CID in early February to informally discuss the facts of this case. In light of that communication, Agent Delperdang concluded that there were insufficient indications of fraud at that time for referral of the case to CID.

## II.

### A. Suppression of Evidence

■ Grunewald's motion to suppress all evidence obtained by Agent Delperdang stems from Grunewald's belief that the evidence was obtained in a criminal investigation, under the guise of a civil tax audit. It is clear that the IRS may not develop a criminal investigation under the auspices of a civil audit. *See United States v. Meier*, 607 F.2d 215 (8th Cir.1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1658, 64 L.Ed.2d 243 (1980); *United States v. Tweel*, 550 F.2d 297 (5th Cir.1977). Significantly different rights, responsibilities, and expectations apply to civil audits and criminal tax investigations. It would be a flagrant disregard of individuals' rights to deliberately deceive, or even lull, taxpayers into incriminating themselves during an audit when activities of an obviously criminal nature are under investigation. *See United States v. Tweel*, 550 F.2d at 299 ("a consent search is unreasonable under the Fourth Amendment if consent was induced by the deceit, trickery or misrepresentation of the Internal Revenue agent"). Therefore, once an IRS agent has developed "firm indications of fraud"[3] in a civil investigation, the case must be turned over to the CID.

■ Evidence obtained in the course of a criminal investigation, where the defendant has not been apprised of the nature of the investigation, may be suppressed only if the defendant establishes that: 1) the IRS had firm indications of fraud by the defendant, 2) there is clear

and convincing evidence that the IRS affirmatively and intentionally misled the defendant, and 3) the IRS's conduct resulted in prejudice to defendant's constitutional rights. *United States v. Meier*, 607 F.2d at 217; *United States v. Tweel*, 550 F.2d at 299. *Accord United States v. Knight*, 898 F.2d 436, 438 (5th Cir.1990); *United States v. Caldwell*, 820 F.2d 1395, 1399 (5th Cir. 1987). However, the mere failure of an IRS agent to inform a defendant that information developed in an audit may result in a further criminal investigation does not indicate affirmative and intentional deceit by the IRS. *Accord United States v. Knight*, 898 F.2d at 438; *United States v. Scllafani*, 265 F.2d 408, 414–415 (2d Cir.), *cert. denied*, 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959).

■ Grunewald's argument fails in all respects. The district court held a post-trial hearing on the issue and considered the evidence before it. The court made the following factual findings: 1) Agent Delperdang did not have firm indications of fraud prior to his initial meeting with Grunewald, 2) there were no firm indications of fraud until Agent Delperdang's examination and analysis of the Mercy checks in March of 1989 (which provided a basis for concluding that Grunewald had a substantial income deficiency and a pattern of under-reporting), and 3) Agent Delperdang did not mislead Grunewald as to the true nature of his audit, or fail to refer the investigation of Grunewald to CID in violation of IRS internal regulations. While Grunewald disagrees with these factual findings, our review of the record and arguments reveals no indication that the lower court erred. Any further elaboration of these facts and circumstances will add nothing to our opinion. Suffice it to say that we are unwilling to weaken the standard set forth above. If IRS agents, exercising sound discretion and good judgment, fear suppression of evidence where no intentional, prejudicial misrepresentation is afoot, civil audits will prematurely and unnecessarily be referred to CID.

---

**3.** See *Audit Guidelines for Examiners*, CCH Internal Revenue Manual (Audit), Sections 4231, 4564.21, and 9322.1 for IRS guidelines concerning referral of cases to CID.

**B. Production of Handwritten Notes of IRS Agent**

Grunewald's next argument invokes the Jencks Act, 18 U.S.C. § 3500, and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In response to Grunewald's requests for discovery, including agent's notes, the government provided only typewritten summaries of Agent Delperdang's handwritten notes. In its order denying Grunewald's motion for a new trial, the district court noted that it had reviewed the notes as well as the typewritten summaries in camera, and that there was no material difference between the two. In addition, the court concluded that Grunewald was not prejudiced by his lack of access to the original notes.

 Whether information should be produced pursuant to the Jencks Act is to be determined by the district court. The court's ruling should be upheld unless it is clearly erroneous. *United States v. Mechanic*, 454 F.2d 849, 857 (8th Cir.1971), *cert. denied*, 406 U.S. 929, 92 S.Ct. 1765, 32 L.Ed.2d 131 (1972). The district court fulfills its responsibilities if it conducts an in camera review of the evidence. *See Anderson v. United States*, 788 F.2d 517, 519 (8th Cir.1986). Here, while the more prudent and expeditious route would have been for the government to provide the handwritten notes, the district court's holding that the Jencks Act does not require such production is not clearly erroneous. In our review of challenges to the production of typewritten summaries where handwritten notes have been destroyed, we have considered the agent's good faith in destroying the notes, the likelihood that the typewritten notes materially varied from the handwritten notes, and the likelihood that the appellant was prejudiced by the destruction of the notes. *United States v. Leisure*, 844 F.2d 1347, 1361 (8th Cir.), *cert. denied*, 488 U.S. 932, 109 S.Ct. 324, 102 L.Ed.2d 342 (1988). It follows that, even here where the notes may have been available, absent a showing that the type-written summaries departed in substance from the handwritten notes, or that the government acted in bad faith, the typewritten equivalent should be sufficient. We are unable to conclude that Grunewald has been prejudiced by the government's failure to produce the handwritten notes.[4]

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that the government is required, pursuant to a discovery request by a defendant, to produce all evidence favorable to the defendant, and that the suppression of such favorable, material evidence violates due process. Grunewald has failed to establish that the government withheld favorable evidence. Indeed, the court's ruling indicates that the evidence was duplicative, and Grunewald cannot show that there is a reasonable probability that he would have obtained a different result if he had had the opportunity to introduce the evidence. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3382, 87 L.Ed.2d 481 (1985). Further, Grunewald has failed to show that he suffered any prejudice as a result of the court's alleged error. *United States v. Vitale*, 728 F.2d 1090, 1093 (8th Cir.), *cert. denied*, 469 U.S. 825, 105 S.Ct. 103, 83 L.Ed.2d 48 (1984).

We find no violation of the Jencks Act or of *Brady v. Maryland* in the government's failure to produce the handwritten notes.

**C. Jury Instructions**

 One of the elements of tax evasion is willfulness, which connotes a voluntary, intentional violation of a known legal duty. *United States v. Pomponio*, 429 U.S. 10, 11–12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976). A defendant may claim as a defense that, because of a misunderstanding of the law, he had a good faith belief that he was not violating any of the provisions of the tax laws. The government cannot prove that a defendant was aware of the legal duty at issue if the jury credits the defendant's claimed good faith misun-

**4.** We need not meet the question of whether the notes are a "statement" for purposes of the Jencks Act.

derstanding and belief, whether or not the belief is objectively reasonable. *Cheek v. United States*, 498 U.S. 192, 200–03, 111 S.Ct. 604, 610–611, 112 L.Ed.2d 617 (1991).

 Grunewald asserts that the district court's jury instruction on willfulness is contrary to *Cheek v. United States, supra*, because it encouraged the jury to use an objective standard in determining whether Grunewald acted willfully, and it did not make clear that Grunewald's good faith belief that he had done all that the law required of him need not be objectively reasonable. The one paragraph of the court's lengthy instruction on willfulness which is at issue states:

> It is for you to decide whether the defendant acted in good faith or whether he willfully evaded and defeated taxes due and owing. In making this determination, you are entitled to consider all of the evidence received in this case which bears on the defendant's state of mind. You may also consider the reasonableness of the defendant's asserted beliefs in determining whether the belief was honestly or genuinely held. In considering the defendant's asserted good-faith misunderstanding, you must make your decision based upon what the defendant actually believed and not upon what you or someone else believe or think the defendant ought to believe. If you find that the defendant's beliefs were held in good faith, you may not find the defendant guilty simply because you find that the beliefs were unreasonable. The test is whether the defendant himself believed in good faith that he had reported and paid the entire tax due under the Internal Revenue Code.

Due to Grunewald's failure to object to the instruction at trial, we review the instruction for plain error. *United States v. Gantos*, 817 F.2d 41, 43 (8th Cir.), *cert. denied*, 484 U.S. 860, 108 S.Ct. 175, 98 L.Ed.2d 128 (1987). Nothing in this instruction implies the application of an objective standard of reasonableness. The reasonableness of Grunewald's assertions that he relied upon his accountant honestly and in good faith was appropriately before the jury. The

jury instructions, read as a whole, suffer from no error as to the willfulness of Grunewald's actions.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.