## UNITED STATES of America

### v.

### William J. GARRITY.

### No. 98–CR–30019–MAP.

United States District Court,
D. Massachusetts.

June 29, 1999.

---

**83**

Michael O. Jennings, Springfield, MA, for William J. Garrity.

C. Jeffrey Kinder, United States Attorney's Office, Springfield, MA, Corey J. Smith, U.S. Dept. of Justice, Tax Division, Washington, DC, for U.S.

### MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO SUPPRESS

(Docket No. 63)

PONSOR, District Judge.

The defendant, a chiropractor, is charged with three counts of tax evasion, covering tax years 1990, 1991 and 1992, as well as one count of obstruction of justice. Prior to the commencement of the criminal investigation, the defendant was the subject of a civil audit by Veronica Washington, an IRS examiner.

The defendant has moved for an order suppressing "all evidence obtained from defendant after June 16, 1994 and any evidence derived therefrom." Defendant's Memorandum of Law (Docket No. 63) at 12. In the alternative, he seeks an evidentiary hearing to permit further development of the pertinent record.

Under the applicable legal standard, the facts of record are insufficient to justify allowance of the Motion to Suppress. Moreover, it is clear given the state of the record that an evidentiary hearing would constitute no more than the proverbial fishing expedition, and a fruitless one at that. For these reasons, the court will deny both the Motion to Suppress and the request for an evidentiary hearing.

The facts are relatively straightforward. The civil audit began on or about July 8, 1993. An initial interview of the defendant took place on August 5, 1993. It is undisputed that Ms. Washington represented that she was conducting a civil audit, which was true. She did not affirmatively indicate during ongoing contacts with the defendant that discovery of criminal activity might lead to a criminal prosecution. During the course of the civil audit, evidence of possible improprieties on the part of the defendant eventually did emerge. For example, on August 6, 1993, the examiner noted that the defendant lacked adequate substantiation for his claimed expenses. In March of 1994 the agent determined that the defendant appeared to be understating the scope of his stock ownership. In June of 1994 the agent found a discrepancy in income in excess of $44,000. At some point Ms. Washington observed that the taxpayer appeared to be living well beyond his reported means.

The defendant argues that by June 16, 1994 the IRS had received "firm indications of fraud" through its civil audit and was therefore obliged to make a formal referral for criminal investigation. According to defendant, Ms. Washington nevertheless continued to press forward with the civil audit when she "must have known that Defendant was continuing to communicate with her on the fair assumption that at worst, the audit would result in a civil assessment or a negotiated civil settlement." Memorandum at 10. During the course of later discussions, the defendant apparently made some false exculpatory statements, whose admission at trial might hurt him and which he seeks to suppress.

The fountainhead of law on the admissibility of statements obtained in a civil audit is *United States v. Tweel*, 550 F.2d 297 (5th Cir.1977). In that case, the taxpayer was under criminal investigation for tax violations. In order to obtain evidence, the Organized Crime and Racketeering Section of the Department of Justice specifically requested that a civil audit be conducted. When defendant's accountant inquired during the civil audit process

whether a criminal inquiry was going on, the civil revenue agent lied, stating that he was merely conducting a civil audit. Through this deliberately orchestrated civil audit, the criminal investigators were able to obtain records which later formed a part of the evidence in the criminal case.

The Fifth Circuit determined that such conduct "grossly deceived" the defendant and justified allowance of the motion to suppress. The *Tweel* court added, however:

> We conclude that the mere failure of a revenue agent (be he regular or special) to warn the taxpayer that the investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, do not constitute fraud, deceit and trickery. Therefore, the record here must disclose some affirmative misrepresentation to establish the existence of fraud, and the showing must be clear and convincing.

*Tweel* at 299.

More recently, the factors to be considered in evaluating a motion to suppress the fruits of a civil audit have been further focused in *United States v. Grunewald*, 987 F.2d 531 (8th Cir.1993). Here, the court stated:

> Evidence obtained in the course of a criminal investigation, where the defendant has not been apprised of the nature of the investigation, may be suppressed only if the defendant establishes that: 1) the IRS had firm indications of fraud by the defendant, 2) there is clear and convincing evidence that the IRS affirmatively and intentionally misled the defendant, and 3) the IRS's conduct resulted in prejudice to defendant's constitutional rights. However, the mere failure of an IRS agent to inform a defendant that information developed in an audit may result in a further criminal investigation does not indicate affirmative and intentional deceit by the IRS.

*Id.* at 534 (citations omitted).

Even more recently, the Seventh Circuit in *United States v. Peters*, 153 F.3d 445 (7th Cir.1998), further discussed what constitutes "a firm indication of fraud." Such indications occur when the civil audit reveals that "the taxpayer has engaged in a consistent pattern of substantial under reporting of income and/or overstatement of deductions such that an intent to evade taxes can be inferred." *Id.* at 455. The court noted that it is proper during a civil audit, even where an agent discovers potential violations, "to give the taxpayer an opportunity to explain the violations before determining the appropriateness of the criminal referral." *Id.* Even then, the revenue agent must be given the time to assess the taxpayer's explanation. A firm indication of fraud "should be distinguished from a first indication of fraud." *Id.*

In this case, the record contains no persuasive indication—let alone clear and convincing evidence—that the examiner did more than obtain evidence, give the defendant an opportunity to offer his explanation and then assess the defendant's credibility. Indeed, right up to the referral for criminal investigation the examiner was continuing to attempt to obtain relevant records.

Nothing in the Referral Report submitted by Ms. Washington to the criminal investigators suggests to the contrary. It is inevitable, in any referral, that a responsible IRS employee will assemble and present all the evidence justifying the decision to turn the case over to criminal investigators. Obviously, the decision in itself, and its justification, cannot, except in very unusual circumstances, constitute evidence that the audit violated the defendant's rights, or that the evidence obtained during the civil audit necessarily constituted "firm indications of fraud" requiring an even earlier referral.

Equally importantly, even if the evidence obtained by Ms. Washington during the civil audit constituted a sufficiently firm indication of fraud to justify an earlier

referral for criminal investigation, no evidence suggests that the IRS "affirmatively and intentionally misled the defendant" as required by *Grunewald*. Nothing in the record evidences an attempt "to deliberately deceive, or even lull" the defendant into incriminating himself during the audit when "activities of an obvious criminal nature" were under investigation. *Grunewald* at 534.

Defendant himself, who would certainly know, has not filed an affidavit indicating his observations of any such deceptive conduct on the part of the examiner. Indeed, the only allegations that are even offered are (1) that the examiner failed to state that discovery of intentional wrongdoing might lead to criminal prosecution and (2) that, as a result of this omission, the defendant assumed that he could never be the target of anything more than a civil audit—a state of mind that he alleges Ms. Washington "must have known." This argument is miles from any clear and convincing demonstration of affirmative and intentional deception on the part of the IRS.

The deficiencies in the record are fatal both to the Motion to Suppress and the request for an evidentiary hearing. While the case law does not appear to address the standard justifying an evidentiary hearing, this court finds analogous guidance in the Supreme Court's *Franks v. Delaware* case. 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In that case, Justice Blackmun concluded that to justify an evidentiary hearing, the moving party's evidence must be more than conclusory and must be supported by more than a mere desire to cross-examine. The defendant must be able to point to at least some specific evidence tending to support the existence of a constitutional violation. *Id.* at 171, 98 S.Ct. 2674. Here, the evidence falls far short of that threshold.

For the foregoing reasons, the Motion to Suppress is hereby DENIED, without the necessity of an evidentiary hearing.

It is So Ordered.