John A. LENCYK, Plaintiff,

v.

**INTERNAL REVENUE SERVICE,**
Defendant/Third–Party
Plaintiff,

v.

**Richard L. Ortiz, Third–
Party Defendant.**

No. EP–03–CA–0219–PRM.

United States District Court,
W.D. Texas,
El Paso Division.

March 29, 2005.

Rene Ordonez, Rodolfo Mata, Delgado, Acosta, Braden & Jones, P.C., El Paso, TX, for Plaintiff.

David P. Leeper, El Paso, TX, for Third–Party Defendant.

### MEMORANDUM OPINION

MARTINEZ, District Judge.

On this day, the Court considered the following submissions in the above-captioned cause: (1) Richard L. Ortiz's ("Ortiz") "[First] Motion for Summary Judgment," filed on September 10, 2004; (2) Internal Revenue Service's ("IRS") "Response in Opposition to Richard Ortiz's [First] Motion for Summary Judgment and

Brief," filed on September 23, 2004; (3) Ortiz's "Reply to IRS's Response in Opposition to Ortiz's [First] Motion for Summary Judgment," filed on October 7, 2004; (4) IRS's "Motion for Summary Judgment," filed on September 30, 2004, (5) Ortiz's "Objection to IRS's Motion for Summary Judgment," filed on October 8, 2004; (6) IRS's "Reply to Richard Ortiz's Objection to IRS's Motion for Summary Judgment," filed on October 20, 2004; (7) Ortiz's "Second Motion for Summary Judgment," filed on October 12, 2004; and (8) IRS's "Response in Opposition to Richard Ortiz's Second Motion for Summary Judgment," filed on October 20, 2004.

After due consideration and for the reasons set forth below, the Court is of the opinion that (1) IRS's Motion for Summary Judgment should be granted; (2) Ortiz's First Motion for Summary Judgment should be denied; and (3) Ortiz's Second Motion for Summary Judgment should be denied.

## I. PROCEDURAL HISTORY

On June 5, 2003, John Lencyk ("Lencyk") filed his original complaint in this Court asserting causes of action arising under 28 U.S.C. § 1331, 28 U.S.C. § 1346, the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., and Federal Rule of Civil Procedure 65. This is a suit involving unpaid employment taxes.

Lencyk was an employee of M.E.E., Inc. ("MEE"), a Texas corporation that failed to deposit certain trust fund payroll taxes of its employees. By notice dated December 11, 2001, Lencyk was notified that a trust fund penalty was being assessed against him personally by the IRS. Lencyk commenced the present suit seeking a refund of taxes paid and a declaratory judgment. In its answer, IRS filed a third party complaint against Ortiz, the founder, principal owner, president, and chief executive officer of MEE. The Third Party

Complaint was filed on August 11, 2003. A summons directed to Ortiz was issued by the District Clerk on November 17, 2003. On January 6, 2004, the summons and a copy of the Third Party Complaint were personally served on Ortiz. Under Federal Rule of Civil Procedure 12(a)(1)(A), Ortiz had until January 26, 2004 to file an answer or other responsive pleading. Ortiz, however, did not file any timely responsive pleading.

On February 13, 2004, IRS filed its Motion for Entry of Default and Default Judgment after Ortiz failed to plead or otherwise defend as required by the Federal Rules of Civil Procedure. Default was entered by the District Clerk that same day.

On June 9, 2004, prior to the Court's final determination regarding IRS's Motion for Default Judgment-and 135 days after the proper filing deadline-Ortiz submitted his Answer to IRS's Complaint, along with a motion requesting an extension of time to file an answer and a motion seeking to set aside the entry of default. IRS did not oppose Ortiz's motion. The Court granted Ortiz's request.

On October 4, 2004, Lencyk and the IRS notified the Court that they had reached a settlement agreement. Consequently, on October 20, 2004, the Court entered an order granting dismissal of the pending claims between Lencyk and IRS. On the other hand, unable to settle their claims, Ortiz and IRS each submitted the present cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

Ortiz founded MEE in 1987 and served as its "principal owner, president, and chief executive officer throughout its history." Ortiz Aff. p. 1.

At his deposition, Ortiz referred to MEE as "My company" and said that he

was its "number one guy." Ortiz Depo. P. 9, 17. Ortiz owned 91% of MEE's stock. *Id.* at 10. Ortiz received the largest salary, and would personally guarantee loans for MEE. *Id.* at 13, 29 & 39. Further, Ortiz did the hiring and firing of top management, and had the authority to determine the company's financial policy. *Id.* at 19, 28.

Ortiz signed three IRS Forms 941, Employer's Quarterly Tax Return for MEE. Ortiz Depo. P. 45. Two of these tax returns reflected a balance of tax due. *Id.*

Sometime in 1999,[1] two IRS agents, Ms. Kelly Heick ("Heick") and Ms. Grace Torres ("Torres"), advised Ortiz that he was personally liable for the trust fund portion of the unpaid payroll taxes of MEE. Ruben Apodaca ("Apodaca"), MEE's Certified Public Accountant advised Ortiz that Heick believed he could be found personally liable for the trust fund portion of MEE's payroll tax liabilities. Apodaca Aff. ¶ 5. Ortiz advised Heick that he would borrow money and pay it to the IRS for the trust fund portion that he could be personally liable for. Ortiz Summ. J. Aff. ¶ 6. He personally borrowed approximately $250,000 from Hector Delgado ("Delgado"). *Id.* ¶ 5. As a condition of the loan, Delgado required Ortiz to retain the services of Marcus Saenz ("Saenz"), a certified public accountant and tax specialist. Ortiz Depo. p. 27.

Ortiz deposited the sum of approximately $250,000 into an unspecified checking account, and wrote several checks to the IRS which were delivered to Saenz.[2] Ortiz Depo. p. 21. Apodaca instructed MEE's bookkeeper to write the trust fund designation on the face of the checks. Apodaca Aff. ¶ 6. However, Saenz told the bookkeeper that it was not necessary to write the trust fund designation on the checks

because he was going to deliver them personally to Heick and because he would make sure that they were properly designated. *Id.* Saenz provided the checks to the IRS, but he made no payment designations. Ortiz Depo. p. 22.

On March 18, 2002, a delegate of the Secretary of the Treasury made assessment against, and gave notice and demand, for payment thereof, to Ortiz, for a total of $38,604.84, such amount representing Ortiz's liability under 26 U.S.C. § 6672 for unpaid employment taxes for the fourth quarter of 1998 for MEE. *See* IRS Third Party Compl. Ex. 4.

On April 15, 2002, a delegate of the Secretary of the Treasury made assessment against, and gave notice and demand, for payment thereof, to Ortiz, for a total of $57,401.48, such amount representing Ortiz's liability under 26 U.S.C. § 6672 for unpaid employment taxes for the first quarter of 1999 for MEE. *See* IRS Third Party Compl. Ex. 5.

On April 15, 2002, a delegate of the Secretary of the Treasury made assessment against, and gave notice and demand, for payment thereof, to Ortiz for a total of $2,285.28, such amount representing Ortiz's liability under 26 U.S.C. § 6672 for unpaid employment taxes for the first quarter of 2001 for MEE. *See* IRS Third Party Compl. Ex 6.

The IRS concedes that, to date, Mr. Ortiz has had credits applied towards this liability in the amount of $9,469.00. Thus, the total amount in controversy is $89,597.26, plus interest and all statutory additions therein provided by the law.

To date, Ortiz has neglected, failed, and refused to pay the full amount of the assessments, and there remains due on the

---

1. Ortiz did not specify a particular date.

2. Ortiz did not provide exact dates on which these events transpired.

assessments a total amount of $89,597.26 plus interest and all statutory additions.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) mandates summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the parts of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Although the movant must " 'demonstrate the absence of a genuine issue of material fact,' [it] need not *negate* the elements of the non-movant's case." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548) (emphasis in original). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence indicates that a reasonable fact-finder could find in favor of the non-moving party. *See id.*

Since the moving party has the burden of proof, evidence is construed in favor of the opponent and the non-movant is given the benefit of all favorable inferences. *See Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). When the moving party has properly supported his summary judgment motion, the non-moving party must come forward with "significant probative evidence" showing that there is an issue regarding material facts. *Ferguson v. Nat'l. Broad, Co., Inc.,* 584 F.2d 111, 114 (5th Cir.1978). If the

movant satisfies its initial burden, the non-movant must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing FED. R. CIV. P. 56(e) (emphasis omitted)). In other words, "the non-movant must adduce evidence which creates a material fact issue concerning each of the essential elements of its case for which it will bear the burden of proof at trial." *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir.1993) (citation omitted). The court must resolve factual controversies or disputes in the non-movant's favor, but "only when there is an *actual* controversy, that is, when both parties have submitted evidence of contradictory facts." *Little,* 37 F.3d at 1075 (emphasis added). The court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

The non-movant must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' " identify those facts establishing a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little,* 37 F.3d at 1075 (internal citations omitted). Likewise, "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis omitted). The non-movant "is required to identify

specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998) (citation omitted).

Finally, "[t]he well-settled rule is that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed." *Joplin v. Bias,* 631 F.2d 1235, 1237 (5th Cir.1980) (citing *Volunteer State Life Ins. Co. v. Henson,* 234 F.2d 535, 537 (5th Cir.1956)).

## IV. ANALYSIS

### 1. IRS's Motion for Summary Judgment

IRS filed its Motion for Summary Judgment asserting that it is entitled to judgment under the statutory language of 26 U.S.C. § 6672.

The Internal Revenue Code requires employers to withhold from employees' wages the amount owed by each employee for federal income taxes and the employees' share of FICA taxes. 26 U.S.C. §§ 3402, 3102. The withheld funds are held in trust by the employer for the United States. *Howard v. United States,* 711 F.2d 729, 733 (5th Cir.1983). These "trust fund taxes" are for the exclusive use of the United States and are not to be used to pay the employer's business expenses, including salaries, or for any purpose. *See* 26 U.S.C. §§ 3102(b), 3403, & 7501(a). If an employer withholds these taxes but fails to pay them over to the United States, the employee is nevertheless given full credit for having paid the taxes, and the Government may not require any additional payment from the employee. *Slodov v. United States,* 436 U.S. 238, 243–245, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). Thus, unless the government can collect these taxes

from the employer or the persons responsible for the collection and nonpayment of the taxes, the revenues are forever lost to the Government. *Id.*

■ To protect against such losses, § 6672 of the Code was enacted to provide the government with a mechanism by which it may collect the withheld taxes. *Wetzel v. United States,* 802 F.Supp. 1451, 1455 (S.D.Miss.1992). When a corporate employer fails to pay over the trust fund taxes to the United States, § 6672 of the Code imposes a penalty equal to the entire amount of the unpaid taxes on "any person" required to collect, account for, or pay over the withheld taxes, who "willfully" fails to do so. This penalty, however, is "separate and distinct from the liability imposed on the employer to remit the trust fund taxes." *Stallard v. United States,* 12 F.3d 489, 493 (5th Cir.1994); *Barnett v. Internal Revenue Service,* 988 F.2d 1449, 1453 (5th Cir.1993) (citing *Turnbull v. United States,* 929 F.2d 173, 178 (5th Cir.1991)). In essence, § 6672 establishes a two-part test for imposing liability on persons for failure to pay federal withholding taxes. The initial requirement, "to collect, truthfully account for, and pay over any tax imposed by this title...," necessitates a finding that the individual is a "responsible person." *Slodov,* 436 U.S. at 245, 98 S.Ct. 1778. Second, the "responsible person" must have "willfully" failed to pay the taxes in question. 26 U.S.C. § 6672(a).

■ Additionally, in § 6672 cases, once the Government offers an assessment into evidence, the burden of proof is on the taxpayer to disprove his responsible-person status or willfulness. *Morgan v. United States,* 937 F.2d 281, 285 (5th Cir.1991). Here, because the Government has introduced the assessment into evidence, the burden has shifted to Ortiz to prove either that he is not a "responsible person" or

that he did not act "willfully." At the summary judgment stage, however, he need only adduce evidence that creates a genuine issue of material fact.

### A. Was Ortiz a "responsible person" with respect to MEE under § 6672 for the relevant time periods?

The Fifth Circuit "generally takes a broad view [regarding] who is a responsible person." *Wood v. United States*, 808 F.2d 411, 415 (5th Cir.1987); *Barnett*, 988 F.2d at 1454. In *Wood*, the Court stated:

"... we cannot ignore the extensive case law that narrowly constrains a fact finder's province in § 6672 cases". Thus, although "the facts ... are critical in ... any § 6672 case, we tend to agree with the other Circuits that have held that certain facts will almost invariably prove dispositive of responsibility."

*Wood*, 808 F.2d at 415.

■ The crucial inquiry is whether Ortiz "had the effective power to pay the taxes owed." *Id.* This inquiry asks whether he "had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed." *Barnett*, 988 F.2d at 1454. The Court looks to six non-exclusive factors to determine responsibility pursuant to § 6672. The indicia of responsibility are: (1) being an officer or member of the board of directors; (2) ownership of a substantial amount of the company's stock; (3) managing the business's day-to-day operations; (4) the authority to hire or fire employees; (5) making decisions as to the disbursement of funds and payment of creditors; and (6) check signing authority. *Id.*

■ IRS submitted evidence which clearly establishes that Ortiz was a responsible person. During the relevant time period, Ortiz served as the president, chief executive officer, and chief financial planner for MEE. Ortiz Aff. p. 1. He was MEE's primary stockholder, highest paid employee, and he was responsible for managing the business's day to day operations, including hiring and firing employees. Ortiz Depo. p. 9, 10, 17. Ortiz was also responsible for choosing which creditors received payments. Apodaca Depo. p. 13, 23. Most importantly, Ortiz had check signing authority, best evidenced by several MEE checks that bear his signature and by his own sworn deposition testimony. *See* IRS Summ. J. Ex. 4; *see also* Ortiz Depo. p. 15, 29. Therefore, the Court finds that Ortiz satisfies the *Barnett* criteria, and that accordingly, he is a responsible person for MEE under § 6672.

### B. Did Ortiz act "willfully" in failing to pay MEE's owed employment taxes?

■ Having determined that Ortiz was a responsible person for the purposes of § 6672 liability, the Court will now determine whether he acted willfully. While the Fifth Circuit takes a broad view of responsible person status, the Circuit uses the willfulness requirement as the "sifter" in most § 6672 cases. *Barnett*, 988 F.2d at 1457. A responsible person acts willfully (1) if he knows that taxes are due but uses corporate funds to pay other creditors, or (2) if he recklessly disregards the risk that the taxes may not be remitted to the government. *Logal*, 195 F.3d at 232. Willfulness under § 6672 requires only a "voluntary, conscious, and intentional act, not a bad motive or evil intent." *Barnett*, 988 F.2d at 1457. Thus, a "considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by payments made to other creditors in the knowledge that the taxes are due, is all that is required to establish willfulness." *Logal*, 195 F.3d at 232.

■ The undisputed facts establish Ortiz's willfulness as defined by *Logal.* Ortiz knew of the unpaid taxes within two

months after they were unpaid. Ortiz Depo. p. 14–15. Despite knowledge of that fact, Ortiz continued to pay his own salary and the salaries of MEE employees, sign checks to other creditors, and authorize payments to other creditors. *Id.* at 15; IRS Summ. J. Ex. 4; Ortiz Aff. ¶ 1. Additionally, the fact that Ortiz was president of the company, ran its day-to-day operations, and reviewed its financial statements, satisfies the reckless disregard test for willfulness. *See Sutton v. United States,* 194 F.Supp.2d 559, 565 (E.D.Tex. 2001). IRS, therefore, has satisfied its burden in showing that Ortiz acted willfully in failing to pay over to the United States the owed employment taxes.

### C. Ortiz's Objection to IRS's Motion for Summary Judgment

Having satisfied its burden, IRS's initial burden now shifts to Ortiz. In his Objection to IRS's Motion for Summary Judgment, Ortiz argued that he was not a responsible party for MEE, and that he did not act willfully in failing to pay owed employment taxes.[3]

■ To save his company, in March of 2000, Ortiz bonded out MEE's contracts to Cumberland Casualty ("Surety").[4] *See* Ortiz Depo. p. 24. Surety's role was to ensure that, if there were insufficient funds to complete a project, the project would nonetheless be completed with funds from Surety. *Id.* In return, Surety assumed control of MEE's receivables, and Ortiz paid it a bonding fee. *Id.* Thus, since Surety took over MEE in 2000, Ortiz ar-

gues that he can no longer be held liable under § 6672 as a responsible person.

In terms of evidentiary support, Ortiz submitted an *unsigned* and *undated* contract purported to be between MEE and Surety to indicate that the Surety was responsible for paying the owed employment taxes. *See* Ortiz Obj. to IRS Summ. J. Ex. A. Additionally, Ortiz submitted various copies of faxes that he sent to Surety requesting that Surety pay the owed employment taxes. *See* Ortiz Obj. to IRS Summ. J. Ex. B, C, & D.

As stated above, § 6672 applies to "any" responsible persons, not just to the person most responsible for the payment of the taxes. *Barnett,* 988 F.2d at 1455. "There may be-indeed, there usually are-multiple responsible persons in any company." *Id.* To avoid liability as responsible person, it is not sufficient to merely point to another responsible person since more than one individual may be found to have been responsible person within employer company. 26 U.S.C. § 6672. Thus, the Court concludes that, even if Surety was able to make some financial determinations, that fact alone is not dispositive of Ortiz's liability.

Further, Ortiz's argument, that he was not a responsible person because Surety had assumed financial control of MEE, is to no avail. *See Commonwealth Nat'l Bank of Dallas v. United States,* 665 F.2d 743, 747 (5th Cir.1982). In *Commonwealth,* "Responsible Person" attempted to escape § 6672 liability by arguing that "Bank" had taken over all of the "Compa-

---

3. Ortiz also argues that an assessment under 26 U.S.C. § 6672 violates IRS policy as published in the Internal Revenue Manual. *See* Ortiz Obj. to IRS Summ. J. Ex. E (Internal Revenue Manual directs agents not to assess against insolvent taxpayers). The Court, however, summarily rejects this argument. *See Keado v. United States,* 853 F.2d 1209, 1214 (5th Cir.1988) ("Procedures or rules adopted

by the IRS are not law"); *United States v. Knight,* 898 F.2d 436, 438 (5th Cir.1990) (holding that, even if IRS failed to abide by dictates of its Internal Revenue Manual, that still does not convey affirmative rights to taxpayers).

4. Again, Ortiz did not provide any specific dates indicating when these events transpired.

ny's" financial decision making duties. In rejecting this argument, the Fifth Circuit held:

> "if [Bank] exercised exclusive control over which creditors ... were to be paid and when, it remains the case that [Responsible Person] permitted [Company] to continue in business and to use trust funds collected on behalf of the United States to pay other creditors, effectively forcing the United States to become a joint venturer in [Company's] business—precisely the result § 6672 was designed to avoid."

*Id.* at 758.

Additionally, the Court notes that there is no indication that Surety was involved with MEE's financial affairs during the 4th Quarter of 1998, and the 1st Quarter of 1999. Surety's relationship with MEE began on March of 2000, more than a full year after Ortiz was properly subject to § 6672 liability. Ortiz cannot now avoid liability merely by arguing that he was not a responsible party, or that there were more responsible parties, during the relevant time periods. *See Teel v. United States*, 529 F.2d 903 (appointment of receiver for corporation before timely payment of payroll taxes is due does not excuse officer of corporation from penalty with respect to those taxes which accrued before receiver took over).

Ortiz has, thus, failed to meet his burden of production. He has failed to bring forth "specific [material] facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus.*, 475 U.S. at 587, 106 S.Ct. 1348.

---

**5.** Though the record reflects that Ortiz personally borrowed the above-mentioned funds, the funds that were paid over to IRS were from MEE's operating account. *See* IRS Mot. Summ. J. p. 3.

### D. The Court Grants Summary Judgment Against Ortiz Under § 6672

Liability under § 6672 is triggered when a responsible person willfully fails to pay over employment trust fund taxes. 26 U.S.C. § 6672(a). Here, the Court concludes that Ortiz was a responsible person for MEE during the relevant time periods, and that Ortiz willfully paid other creditors, including himself, while knowing that MEE owed its employment taxes. Once Ortiz "became aware of the tax liability, he had a duty to ensure that the taxes were paid before any payments were made to other creditors." *Barnett*, 988 F.2d at 1457. The IRS's evidence, that he failed to do so, establishes willfulness as a matter of law. *Id.* (citing *Howard*, 711 F.2d at 735). A reasonable trier of fact, therefore, could only find that: (1) Ortiz was a responsible person for MEE; (2) Ortiz knew of MEE's tax deficiencies; and (3) Ortiz willfully failed to pay the owed employment taxes. Accordingly, as a matter of law, IRS is entitled to summary judgment.

### 2. Ortiz's First Motion for Summary Judgment

Ortiz filed his First Motion for Summary Judgment asserting that he is entitled to summary judgment under equitable principles.

In late 1999, Ortiz borrowed a sum totaling $250,000 to pay off his debts to the IRS.[5] Ortiz Summ. J. Aff. ¶ 6. Ortiz deposited these funds into an unspecified account, and hired Saenz, purportedly a former IRS agent, to make the payments. Ortiz Depo. p. 27. Saenz, however, failed to properly designate that the amount paid was meant to offset MEE's owed employ-

Additionally, Ortiz did not specify exact dates on which these events transpired.

ment tax liability. *See* Ortiz Depo. p. 22. Apparently, the amount paid was used to offset fees, other taxes, and incurred penalties, but was not directly applied to offset the owed employment tax liability.[6] *See* Apodaca Depo. p. 18. Ortiz argues, nonetheless, that he has already paid-off his existing tax burden, and that therefore, the IRS should be equitably estopped from collecting the owed taxes twice.

■■■ Foremost, the Court notes that Ortiz mischaracterizes the proceedings. He argues that IRS is attempting to twice collect the owed taxes. As previously stated, however, a § 6672 penalty is "separate and distinct from the liability imposed on the employer to remit the trust fund taxes." *Stallard v. United States,* 12 F.3d 489, 493 (5th Cir.1994); *Barnett v. Internal Revenue Service,* 988 F.2d 1449, 1453 (5th Cir.1993). Additionally, a responsible person becomes liable for a § 6672 penalty as soon as payments to IRS become overdue. *Newsome,* 431 F.2d at 742; *United States v. Braswell,* 56 AFTR 2d 85–6218, 1985 WL 5140 (S.D.Ala.1985). Here, the relevant inquiry is whether Ortiz willfully failed to remit the owed employment taxes. Having affirmatively answered that question, the Court concluded that Ortiz was liable under § 6672 the moment MEE failed to timely pay its owed employment taxes, and that, accordingly, IRS rightfully imposed a penalty assessment under § 6672.

Assuming, *arguendo,* that Ortiz's theory has merit, the Court notes that it would still not suffice to warrant summary judgment. Ortiz cites conversations between himself and IRS Agent Heick to show that he is entitled to equitable relief. Ortiz correctly contends that, as to the application of payment for owed taxes, a debtor may, if he chooses to, voluntarily direct its appropriation-meaning that he can direct

payment to a particular tax obligation. *Nat'l Bank of Commonwealth v. Mechanics Nat'l Bank,* 94 U.S. 437, 4 Otto 437, 439, 24 L.Ed. 176 (1876). In *Wood v. United States,* the Fifth Circuit held, however, that in the absence of written direction by the taxpayer, IRS can apply a payment to any outstanding tax liability of the taxpayer in any manner that IRS determines to be appropriate. 808 F.2d 411, 416 (5th Cir.1987); *Kinnie v. United States,* 994 F.2d 279, 286 (6th Cir.1993). Indeed, IRS may apply non-designated payments "in any manner serving its best interests." *Id.*

Here, the record clearly indicates that no written designation was made. *See* Heick Aff. ¶ 5; *see also* Ortiz Depo. p. 22. Ortiz, however, argues that federal courts have allowed equitable designation in the absence of a specific written instruction. *See McKenzie v. United States,* 536 F.2d 726, 730 (7th Cir.1976). Under *McKenzie,* in order to qualify for an equitable designation, the taxpayer must cite to affirmative representations made by the IRS agent indicating that any payments would first be applied to discharge the trust fund indebtedness. The critical inquiry, thus, is whether there was an assurance, on behalf of the IRS agent, that taxpayer could rely on.

To support his conclusion, Ortiz argues that Heick and Ortiz, on various occasions, discussed Ortiz's personal liability for the owed taxes. He argues that Heick knew that Ortiz was personally paying for the owed trust fund employee taxes. In terms of evidentiary support, Ortiz's deposition testimony indicates that Ortiz notified Heick of his intention to personally borrow funds to pay the owed employment taxes. Ortiz Depo. p. 56. IRS, however, submitted an affidavit by Heick, which explicitly

---

**6.** Ortiz did not specifically outline in which    proportion the payments were applied.

states that no such designation or indication was made:

> "I do not have any recollection of ever receiving anything from Mr. Ortiz or anyone else directing me to apply tax payments to the trust fund portion of the liability. If I had received written instructions requesting me to apply a payment(s) to the trust fund portion of the taxes, I would have honored that request."

Heick Aff. ¶ 5.

Heick's affidavit, thereby, negates the assertions made by Ortiz. Further, and of key import, Ortiz does not provide evidentiary support indicating that anyone at the IRS expressly and explicitly told him that payments would first be applied to the trust fund taxes. Here, the record is simply lacking in that critical respect. Additionally, though the record does reflect that Ortiz may have at times indicated his desire that the paid over funds be applied to offset the owed employment taxes, the IRS is not bound by taxpayer's oral instructions to allocate payment to trust fund accounts. *See Kinnie v. United States,* 994 F.2d 279, 286–87 (6th Cir.1993) (noting that IRS is not bound by taxpayer's oral instructions to allocate payment to trust fund amounts). Thus, even if the Court were inclined to fully credit Ortiz's argument, at most, he would only be entitled to a trial, not summary judgment.

The Court, thus, finds that Ortiz has failed to carry his burden in establishing that he is entitled to summary judgment. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Therefore, Ortiz's First Mo-

tion for Summary Judgment should be denied.

### 3. *Ortiz's Second Motion for Summary Judgment*

■ In the alternative, Ortiz submitted an untimely Second Motion for Summary Judgment in which he argued that he was entitled to Summary Judgment against IRS because it failed to pursue payment from MEE's Surety.[7]

Ortiz's argument, however, is foreclosed. *See In re Nece,* 139 B.R. 637, 638 (S.D.Tex. 1992) (reversing bankruptcy court decision holding that IRS abused its discretion for failing to sue sureties). *In re Nece* holds that the IRS has *no duty* to go beyond corporation to corporation's surety to collect taxes before looking to responsible officer. *Id.* (emphasis added). The Court reasoned that:

> "though it was not efficient or prudent for the IRS to allow the statutory limitations period to lapse before it filed suit against the solvent sureties, the unreasonableness is bureaucratic waste, but the ineptness is not equitable to [the taxpayer]."

*Id.*

"[T]hat there may be other fiscally responsible persons or entities does not relieve an officer of his duty to pay taxes under the statute. The IRS has no duty to pursue every person with responsibility for paying the trust fund taxes." *Howard,* 711 F.2d at 734–35. Moreover, as discussed above, during the relevant time period, the responsibility for collecting and

---

**7.** The Court notes that it is within its "broad discretion" to deny Ortiz's Second Motion for Summary Judgment based solely on the fact that it was untimely submitted. *See Doctor's Hosp. of Jefferson, Inc. v. Southeast Med. Alliance, Inc.,* 1995 WL 120137, at *2 (E.D.La. 1995) (citing *Teal v. Eagle Fleet, Inc.,* 933 F.2d 341, 346 (5th Cir.1991)) (holding that

the district court enjoys "broad discretion in controlling its own docket" in regard to the entertainment of substantive motions filed after pretrial deadlines). However, in the interest of achieving a just result, the Court will entertain Ortiz's Second Motion for Summary Judgment.

paying over the employment trust fund taxes belonged solely to Ortiz and MEE. He cannot now attempt to escape § 6672 liability my merely claiming that another entity is responsible. Accordingly, Ortiz's Second Motion for Summary Judgment should be denied.

## V. CONCLUSION

Based on the above analysis of facts and legal principles, the Court concludes that (1) IRS's Motion for Summary Judgment should be granted; (2) Ortiz's First Motion for Summary Judgment should be denied; and (3) Ortiz's Second Motion for Summary Judgment should be denied.